Name: Saul Willis Jr.
602 W McWilliams Ave
Las Vegas NV. 89106

2012 JUL 10 A 11:14

_____
Prison Number

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Saul Willis Jr.,
    Plaintiff,

vs.

The City of Las Vegas

The Regional Transportation

The State of Nevada

North Corridor Constructors

Las Vegas Paving + Pross8V
    Defendant(s).

CASE NO. 2:12cv1214-MMD-CWH
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
PURSUANT TO
42 U.S.C. § 1983**

## A. JURISDICTION

1) This complaint alleges that the civil rights of Plaintiff, Saul Willis Jr.
(Print Plaintiff's name)

who presently resides at 602 W McWilliams Ave, were

violated by the actions of the below named individuals which were directed against

Plaintiff at 2-28-2009 Las Vegas on the following dates
(institution/city where violation occurred)

_____, _____, and _____.
   (Count I)               (Count II)              (Count III)

## Complaint

This complaint involves myself and the neighborhood surrounding F Street, Las Vegas Nevada.

Ethel Willis

Henry Washington

Mr. & Mrs. Earl Fountain

Tarra Jackson

Katherine Duncan

Elijah Green


The following agencies discriminating against us are:

The City of Las Vegas

The Regional Transportation Commission

The State of Nevada

North Corridor Constructors

Las Vegas Paving

PBS&J


The F Street neighborhood has been historically segregated from the rest of the Las Vegas community. The neighborhood has a 40% poverty rate, 1 out

I filed a claim with the insurance company for NDOT.

Kristin Goodman
National Liability Field Claims MS
Helsman Management Services LLC
P.O. Box 11020
Orange Ca, 92856-1020
PH. (800) 303-0100
Claim # P670-051143-01

I presented my case to a Nevada State Senate committee chaired by Senator Horsford (SNEC).

I believe that other people in my neighborhood suffer from the same injustices but their voices have not been heard because the public meetings are filled with people from all over the City who do not sharer our values.

They have shouted at us and poked fun at us and denied us an opportunity to adequately speak our feelings. The meetings were held in government facilities and in churches where our voices were limited by time restraints. We were not recognized when we held up our hands to speak. There were people speaking on our behalf but not speaking for us.   I was always told that my story was being told in the wrong place. I filed a complaint with the NAACP but am still waiting to hear from them.

This is the first time that I have been offered a remedy. I have been told on December 12, 2010 by Councilman Barlow, City of Las Vegas that in order to get any remedy that I would have to sue the City.

**of 2 do not have a high school education and unemployment among teenagers is nearly 50%. Business licenses have been consistently denied and business wishing to locate in the area have been steered to the other side of town.essential services such as library, community center, medical center and fire stations have not been provided. The area is void of trees, sidewalks and bus stop shelters. Taxi cabs will not service the area . This is the only area of Las Vegas where blacks were allowed to live until 1960.**

F Street Timeline

1943: Mayor Cragin refuses to renew business licenses of Black business owners unless they relocate to the Westside. Restrictive covenants and failure to rent to Blacks create defacto segregation

1944-1945 Informal urban renewal programs razes 375 homes, causing overcrowding on the Westside

1945: Reverend Henry Cook and West Side residents petition Mayor Cragin to pave "E" Street, the main thoroughfare on the Westside. All requests for public improvement are denied.

1950: Under Truman's Fair Deal, $1 million federal housing project approved (Kaufman, p. 360)

1951: Predominantly White middle-class residents of Bonanza Village protest use of the 20-acre Zaug Tract for low-cost housing development. Black residents charge racial discrimination. Bonanza Village hires attorney Harvey Dickerson (Kaufman, LV Sun, 4-24-51)

1951: As a compromise to Bonanza Village residents, a "100-foot wide buffer highway" is constructed (Highland Avenue, later renamed Martin Luther King Boulevard), separating the future housing project from Bonanza Village (Kaufman, p. 361; Moehring, p. 179)

1952: City of Las Vegas blacktops areas on the Westside. Federal housing project now known as Marble Manor completed (Kaufman, pp. 362-363).

1955: City of Las Vegas creates ordinance to drive out illegally parked trailer owners. 600 people sign petition to overturn ordinance, but it is retained (Kaufman, p. 375). Paving district established to fund curbing, guttering, and lighting on the West side.

1956: City of Las Vegas applies for federal urban renewal money, allowing it to condemn property for "better" use. City Planning Department extends slum clearance program by recommending that the federal highway (later known as I-15) be routed through the Westside (Kaufman, p. 375).

1957: Federal Highway plans cut highway through the Westside. Westside residents protest plan. Highway plan tied in with urban renewal plan to placate residents. 200 families displaced with promise that they would be moved to better housing (Kaufman, pp. 375-376)

1959: Las Vegas Review-Journal describes plan by State Engineer and city officials to extend Highland Avenue, which had ended at Charleston Blvd. Plan states that Highland Avenue may be extended all the way to San Francisco ( LV Review Journal, 10-15-59).

1960: 160 family dwellings completed. This does not meet demand for housing. Advisory Urban Renewal Committee suggests that further low-income projects should be built outside the Westside, but this suggestion was ignored by planners (Kaufman, p. 378).

1962: Plans for widening I-15 include a cul-de-sac at F Street

1964: Civil Rights Act. Title VI prohibits racial discrimination on any projects involving federal funding

1968: Seven streets closed on the Westside. Led by Ethel Pearson, hundreds of people of the Westside community protest street closures, but streets remain closed.

1971: In response to Westside protests, F and D Streets reconfigured to access Downtown.

2004: Nevada Department of Transportation and City of Las Vegas plan expansion of Interstate Highway (I-15) through the Westside which will include closure of F Street and reconfiguration of D Street . F Street renamed City Parkway on development side of I-15. Government agencies claim they notified residents within 400 feet of the closure.

2006: Las Vegas City Council votes to close F and D streets as part of I-15 expansion. Las Vegas Councilman Lawrence Weekly later claims he did not know the plan would include street closings.

July 2008: Concrete wall built across F Street which cuts off direct access between the Westside and Downtown. City Council members claim they know nothing about the closure.

October 2008: Stop the F Street Closure Coalition formed

January 7, 2009: Protest march on Las Vegas City Hall .

January 9, 2009: Ora Bland, Estella Jimerson, National Action Network and Stop the F Street Closure, LLC file a Federal civil rights lawsuit against the City of Las Vegas and Nevada Department of Transportation for the F Street closure.

**I can not afford an attorney.**

**I have never been notified that the street would be closed.**

# U.S. Department of Justice

# Civil Rights Division

# Coordination and Review Section

## Saul Willis, Jr.

## 602 West McWilliams

## Las Vegas, Nevada 89106

## (702) 210-0942

## 702-646-9390

I can reached any day from 8:00 a.m. until 4:00 p.m. by phone or

Email SaulWillis@gmail.com

If you are unable to reach me for whatever reason, please contact

Stanton Wilkerson, 1010 North Rancho Drive, Las Vegas, Nevada

(702) 646-2551.



U.S. Department
of Transportation
**Federal Highway
Administration**

AUG 30 2011

1200 New Jersey Ave., SE
Washington, D.C. 20590

In Reply Refer To: HCR-40
DOT #2011-0092

Mr. Saul Willis
602 West McWilliams
Las Vegas, Nevada 89106

Dear Mr. Willis:

The Federal Highway Administration (FHWA) has completed the investigation of your complaint of discrimination against the Nevada Department of Transportation, herein after referred to as the Respondent, alleging violations of Title VI of the Civil Rights Act of 1964 (Title VI). Your alleged discrimination is based on your race, African American.

### Background

The complaint involves the Respondent's Interstate 15 (I-15) expansion project. You alleged that the construction of the project caused cracks in the foundation of your home; cracks in the walls of your home in the living room area; and cracks in the cement block wall outside and in the front of your home. The complaint was received in the FHWA Office of Civil Rights by e-mail on January 2, 2011, from the FHWA Nevada Division Office. The issues raised in the complaint are addressed below.

### Issue #1: Whether your home was damaged during the construction of the I-15 expansion project.

The investigation disclosed that you filed a complaint with the Respondent in April or May of 2009 regarding the alleged damage to your home. The Respondent referred the complaint to the contractor whose insurance carrier hired an independent Structural Engineer consultant to inspect your home during May 2009.

Record evidence shows that after the inspection, you were notified by letter dated May 19, 2009, that your claim had been denied. The letter advised you that the denial was based on the finding of the Geotechnical Engineer who concluded that your property was too far from the I-15/F Street bridge demolition work to have suffered construction vibration damage. The distress to the interior walls, ceilings, and stucco, as well as the uneven floors was unrelated to the demolition work at the I-15/F Street Bridge. The findings concluded that the distress to your home was most likely caused by long-term processes, including soil movement within the unconsolidated alluvium and episodic changes in moisture in the crawlspace.

Investigation disclosed that you contacted your home owner's insurance company, which also inspected your property. You indicated that your home owner's insurance company also concluded that the damage to the property pre-existed the construction and was due to the age of the property.

Investigation further disclosed that the prime contractor arranged for a second inspection of your property. On July 8, 2010, you were advised of the results of the second inspection which stated that there was insufficient information to prove that the loss was the result of the project—damages appeared to be age related. The report further stated that the distance from your home to the construction site was too vast for the damages to the home to be related.

### Conclusion

The evidence shows that your home was inspected on three separate occasions. In each instance, the conclusion was the same—that the damage to your home was not caused by the I-15 expansion project.

### Issue #2: Whether the Respondent failed to take appropriate action regarding your concerns about the alleged damage to your home.

Record evidence shows that the Respondent contacted the contractor regarding your concern. The contractor performed inspections on the property which failed to show that the damage cited by you was caused by the I-15 expansion project.

### Conclusion

Based on the findings of the inspection reports, concluding that your property was not damaged by the I-15 expansion project, there is no basis for the Respondent to take any action regarding the concerns raised by you in this complaint.

### Comparative Data

The I-15 expansion project covered 15 to 20 miles of highway. The investigation failed to disclose that any other homeowners filed claims of damage with the Respondent regarding the project.

### THEORIES OF DISCRIMINATION AND ELEMENTS OF PROOF

Title VI prohibits discrimination on the basis of race, color, or national origin under any program or activity receiving Federal financial assistance. The purpose of Title VI is to ensure that public funds are not spent in a way which encourages, subsidizes, or results in discrimination.

Title VI claims may be proven under two primary theories: intentional discrimination/disparate treatment and disparate impact/effects. Under the intentional discrimination/disparate treatment theory, the recipient engages in intentional discrimination based on race, color, or national origin. Under the disparate impact/effects theory, the recipient uses a neutral procedure or

practice that has a disparate impact on individuals of a particular race, color, or national origin, and such practice lacks a "substantial legitimate justification."

Your complaint involves the intentional discrimination/disparate treatment theory of discrimination.

### Intentional Discrimination/Disparate Treatment

An intent claim alleges that similarly-situated persons are treated differently because of their race, color, or national origin. To prove intentional discrimination, one must show that a challenged action was motivated by an intent to discriminate. This requires a showing that the decisionmaker was not only aware of the complainant's race, color, or national origin, but that the recipient acted, at least in part, because of the complainant's race, color, or national origin.

The investigating agency must first determine if the complainant can raise an inference of discrimination by establishing a prima facie case. The elements of a prima facie case may include the following:

1. That the complainant is a member of a protected group;

2. That the complainant applied for, and was eligible for, a federally assisted program or benefit;

3. That despite the complainant's eligibility, the complainant was rejected; and,

4. That the recipient treated others not in the complainant's protected group differently.

The elements of proof are discussed below.

1. **Whether you are a member of a protected group.**

    You are a member of a protected group by nature of your race, African American.

2. **Whether you applied for and was eligible for a federally assisted program or benefit.**

    You requested that the Respondent, a recipient of Federal financial assistance, pay for the damage to your home allegedly caused by the Respondent's I-15 expansion project.

3. **Whether despite your eligibility, your request was denied.**

    The investigation disclosed that the Respondent denied your request. However, record evidence shows that the denial was based on inspection reports which failed to show that the damage cited by you was caused by the Respondent's I-15 expansion project.

4. **Whether others not in your protected group were treated differently.**

> The evidence failed to show that the Respondent received complaints from other residents along the project route.

The record fails to show that the damage to your home was caused by the Respondent's I-15 expansion project. The record has established that the damage to your home pre-existed the construction of the project. Therefore, the Respondent had no obligation to provide a benefit to you for the damage to your home.

### Decision

Based on the evidence obtained and reviewed during the investigation of this complaint, the FHWA concludes that the evidence does not support your allegation that Title VI was violated by the Respondent.

This concludes processing of this complaint and no further action will be taken by the FHWA.

Sincerely yours,

Brenda F. Armstead
Director, Investigations and Adjudications

**U.S. Department of Justice**

Civil Rights Division

*Federal Coordination and Compliance Section-NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

Doc #362473

JAN 1 3 2012

Mr. Saul Willis, Jr.
602 West McWilliams Avenue
Las Vegas, NV 89106

Dear Mr. Willis:

Your letter was received by the Federal Coordination and Compliance Section of the Civil Rights Division of the U.S. Department of Justice. We have considered carefully the information you have provided, but the matter does not appear to be within the jurisdiction of our office.

However, by the enclosed letter, we have referred the matter to the agencies that are most likely to assist you. If you have any questions, please contact the U.S. Environmental Protection Agency at (202) 564-7272 and the U.S. Department of Transportation at (202) 366-4648.

Sincerely,

Deeana Jang
Chief
Federal Coordination and Compliance Section
Civil Rights Division

Enclosures

CC: Mr. Rafael DeLeon, EPA
    Ms. Camille Hazeur, DOT

**U.S. Department of Justice**

Civil Rights Division

*Federal Coordination and Compliance Section-NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

JAN 13 2012

Doc #362473

Mr. Rafael DeLeon
Director
Office of Civil Rights
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Mail Stop 1201A
Washington, D.C. 20004

Dear Mr. DeLeon:

    Enclosed for your review is a letter received by the Federal Coordination and Compliance Section of the Civil Rights Division of the U.S. Department of Justice. The matter does not appear to be within the jurisdiction of our office.

    However, the issues raised may fall within the jurisdiction of your agency and, therefore, we are referring it to you for appropriate disposition. The writer has been notified of the referrals.

    Thank you for your assistance in this matter.

Sincerely,

Deeana Jang
Chief
Federal Coordination and Compliance Section
Civil Rights Division

Enclosures

CC: Ms. Camille Hazeur, DOT

**U.S. Department of Justice**

Civil Rights Division

*Federal Coordination and Compliance Section-NWB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

JAN 1 3 2012

Doc #362473

Ms. Camille M. Hazeur
Director
Departmental Office of Civil Rights
Office of the Secretary
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Room W78-338, Mail Stop S-30
Washington, D.C. 20590

Dear Ms. Hazeur:

Enclosed for your review is a letter received by the Federal Coordination and Compliance Section of the Civil Rights Division of the U.S. Department of Justice. The matter does not appear to be within the jurisdiction of our office.

However, the issues raised may fall within the jurisdiction of your agency and, therefore, we are referring it to you for appropriate disposition. The writer has been notified of the referrals.

Thank you for your assistance in this matter.

Sincerely,

Deeana Jang
Chief
Federal Coordination and Compliance Section
Civil Rights Division

Enclosures

CC: Mr. Rafael DeLeon, EPA



U.S. Department
of Transportation
**Federal Highway Administration**

1200 New Jersey Avenue, SE.
Washington, DC 20590

May 22, 2012

In Reply Refer To: HCR-40
DOT #2012-0090-IN

Mr. Saul Willis, Jr.
602 West McWilliams Avenue
Las Vegas, Nevada 89106

Dear Mr. Willis:

This is in reference to the complaint of discrimination you filed with the U.S. Department of Justice (DOJ) against the Nevada Department of Transportation (NDOT). This complaint alleges violations of Title VI of the Civil Rights Act of 1964 (Title VI). The DOJ forwarded your complaint to the U.S. Department of Transportation, Departmental Office of Civil Rights (DOCR) on January 13, 2012. The DOCR forwarded your complaint to the Federal Highway Administration (FHWA) Office of Civil Rights (HCR) on January 26, 2012, for appropriate handling. Your complaint was received by our office on January 31, 2012.

Your complaint alleges that residents of your community that lies in and around the F Street corridor in Las Vegas are being unjustly impacted by a federally funded construction project. Further, you allege that your neighborhood has been excluded from the economic enjoyment experience by other adjacent communities as a result of this construction activity.

The HCR's Investigations and Adjudications Unit has thoroughly reviewed your complaint and, in performing our due diligence, compared it to an earlier complaint it received in 2011 from which you made similar allegations. After a thorough review of the facts of this matter, it has been determined that your complaint cannot be accepted for investigation as the allegations contained therein were investigated at that time and found to not have merit. Beginning a new investigation on the same issues would render the same conclusion rendered in August 2011.

Section III, B. of the DOJ's "Investigation Procedures Manual for the Investigation and Resolution of Complaints Alleging Violations of Title VI and Other Nondiscrimination Statues" states in part that, ". . . an agency generally need not proceed with or continue a complaint investigation and attempts at resolution of an allegation under certain circumstances, which include:

> 4) The complaint allegations are foreclosed by *previous decisions* by Federal courts, the Department of Justice, or agency policy determinations."

In HCR's letter dated August 30, 2011, to you, it was stated that the results of the investigation performed then determined that no Title VI violations occurred. The current review renders no dissimilar conclusion from the above-referenced letter.

Should you wish to pursue this matter further, you may pursue a private right of action by filing in the appropriate U.S. District Court.

Sincerely yours,

Warren S. Whitlock
Associate Administrator for Civil Rights

cc:
Ms. Susan E. Klekar, Division Administrator, FHWA, HDA-NV
Mr. Kevin L. Resler, Civil Rights Program Manager, FHWA, HDA-NV
Ms. Norma J. Norman, Civil Rights Program Manager, NDOT